UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| GLORIA SUN JUNG, | : | | |
|---|---|---|---|
| Plaintiff, | : | Civil Action No.: | 18-962 (RC) |
| v. | : | | |
| | : | Re Document Nos.: | 19, 23, 29, 33, 37, 41 |
| | : | | 57 |
| BANK OF AMERICA, N.A., *et al.*, | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

GRANTING DEFENDANTS' MOTIONS TO DISMISS, *SUA SPONTE* DISMISSING ALL CLAIMS AGAINST ALL REMAINING DEFENDANTS, DENYING MOTION FOR SANCTIONS, AND DENYING ALL OTHER PENDING MOTIONS AS MOOT

### I. INTRODUCTION

After over half a decade of litigation surrounding the foreclosure of her home, Plaintiff Gloria Sun Jung brought this case in April 2018, alleging a wide range of civil and criminal acts by Defendants, all individuals and entities involved at some level in the loan and foreclosure process. Most defendants have now moved to dismiss Jung's claims on a number of grounds, including, as relevant here, lack of subject matter jurisdiction. Several defendants have also moved for sanctions, while Jung has moved to strike multiple motions and for default judgment. Because this Court finds that it has no subject matter jurisdiction over any of Jung's claims, it grants the motions to dismiss and *sua sponte* dismisses all claims against all remaining defendants. The Court denies the motion for sanctions because it finds that Jung's first-time filing in this Court is not sufficient to warrant the imposition of sanctions. All other pending motions are denied as moot.

1

## II.  FACTUAL BACKGROUND

In February 2008, Plaintiff Gloria Sun Jung ("Jung") obtained a $697,000 loan from Defendant Countrywide Bank FSB ("Countrywide") and executed a promissory note and mortgage with Countrywide, identifying property located at 16 Rising Meadow Way, East Stroudsburg, Pennsylvania (the "East Stroudsburg property") as the collateral securing the loan. *See* BANA's Mem. Supp. Mot. Dismiss at 1, ECF No. 19; February 11, 2008 Note, Am. Compl. Ex. 1 at 23–24, ECF No. 6-1; February 11, 2008 Mortgage, BANA's Mot. Dismiss Ex. B, ECF No. 19-2. Jung contends that she was "not aware that she was getting into the contract with 'security'" by executing the note and mortgage with Countrywide. Am. Compl. at 10, ECF No. 6. Following Countrywide's bankruptcy in 2008, the note and mortgage were assigned to Defendant Bank of America ("BANA"). *See id.* at 7.

After Jung defaulted on her mortgage, BANA began a foreclosure action in June 2012. *See* BANA's Mem. Supp. at 2. Jung also contends she had no knowledge of what "foreclosure" meant at the time of signing the note. Am. Compl. at 10. On April 17, 2015, the Court of Common Pleas of Monroe County, Pennsylvania entered a Default Judgment in BANA's favor. *See* BANA's Mem. Supp. at 2; Am. Compl. at 11. After Defendant Wilmington Savings Fund Society, FSB ("Wilmington") substituted in as BANA's successor in interest to the East Stroudsburg property, a Sheriff's deed was recorded against the property in Wilmington's favor on August 26, 2016. *See* BANA's Mem. Supp. at 2; Sheriff's Deed, Am. Compl. Ex. 1 at 27–30.

Following the default judgment and Sheriff's sale, but before Wilmington took possession of the property, Jung appealed directly to the Supreme Court of Pennsylvania, asking for an injunction against her eviction. *See* Am. Compl. at 12; BANA's Mem. Supp. at 2. The Supreme Court denied the appeal and transferred the case to the Superior Court of Pennsylvania.

2

*See* Am. Compl. at 12; BANA's Mem. Supp. at 2–3. The Superior court denied the injunction and allowed the eviction proceedings to continue. *See* Am. Compl. at 12. On September 1, 2017, the Court of Common Pleas issued a Writ of Possession in Wilmington's favor. *See* BANA's Mem. Supp. at 2; Writ of Possession, Am. Compl. Ex. 1 at 36–38.

Jung then declared bankruptcy in the United States Bankruptcy Court for the Middle District of Pennsylvania, and initiated an adversary proceeding to challenge the Default Judgment and Sheriff's Sale. *See* Am. Compl. at 12; BANA's Mem. Supp. at 3. The bankruptcy and related adversary proceeding were subsequently dismissed, *see* BANA's Mem. Supp. at 3, with the Bankruptcy Court granting relief from the automatic bankruptcy stay on March 20, 2018, *see* Bankruptcy Order, Am. Compl. Ex. 1 at 40.

In parallel to the formal foreclosure and eviction process, Jung filed a number of proceedings challenging the foreclosure, both in state and in federal court. Between 2015 and 2018, she initiated six lawsuits challenging the foreclosure in the U.S. District Court for the Middle District of Pennsylvania. *See* Wilmington Mem. Supp. Mot. Sanctions at 3–5, ECF No. 41-2 (listing cases). All federal lawsuits were dismissed or otherwise closed. *See id.*[1] In 2017, Jung also sued 10 defendants in state court in Pike County for wrongful foreclosure. *See id.* And on April 19, 2018, Jung filed another complaint in the Court of Common Pleas of Monroe

---

[1] Aside from Wilmington's memorandum in support of its motion for sanctions, the Court is also free to take judicial notice of the dockets for Jung's past lawsuits. *See, e.g.*, *Al-Aulaqi v. Panetta*, 35 F. Supp. 3d 56, 67 (D.D.C. 2014) ("A court may take judicial notice of facts contained in public records of other proceedings[.]" (citing *Covad Commc'ns Co. v. Bell Atlantic Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005)). The dockets confirm that all prior cases have been terminated. *See* Docket, *Yun v. Bank of Am.*, 3:18-cv-00649-RDM (M.D. Pa.); Docket, *Yun v. Bank of Am.*, 3:17-cv-01690-RDM (M.D. Pa.); Docket, *Yun v. Bank of Am.*, 3:16-cv-02416-MEM (M.D. Pa.); Docket, *Yun v. Bank of Am.*, 3:16-mc-00469-MEM (M.D. Pa.); Docket, *Yun v. Bank of Am.*, 3:16-cv-00704-RDM-KM (M.D. Pa.); Docket, *Jung v. Bank of Am.*, 3:15-mc-00561-UN (M.D. Pa.).

County, seeking quiet title to the property and asking for the prior judgments to be voided. *See* Am. Compl. at 14; BANA's Mem. Supp. at 3. That lawsuit was resolved on June 12, 2018 with Jung being barred from pursuing any further *pro se* litigation against related defendants and for related claims without first obtaining leave of court. *See* Wilmington Mem. Supp. Mot. Sanctions at 2; June 12, 2018 Order, Wilmington Mot. Sanctions Ex. 1 at 332–33, ECF No. 41-1.

On April 24, 2018, Jung was evicted. *See* Am. Compl. at 15. Just two days after the eviction on April 26, 2018, Jung filed the present case in this Court. *See* Compl., ECF No. 1. On May 2, 2018, Jung filed an amended complaint. *See* Am. Compl. In the amended complaint, Jung brings claims against Countrywide; BANA; Wilmington; the Commonwealth of Pennsylvania; Pennsylvania judges and judicial employees who presided over her legal proceedings;[2] the Sheriff's office that conducted her eviction and several of its employees;[3] as well as multiple other Defendants who at one point or another were involved in the loan generation, loan servicing, or legal proceedings surrounding the East Stroudsburg property.[4] *See id.* Jung reasserts claims previously litigated and brings various additional allegations for constitutional violations, fraud, criminal acts, and violations of several civil statutes. *See id.*

---

[2] Jung brings claims against Judges Arthur Zulick, David Williamson, Jennifer Sibum, Russell Shurtleff, and Gregory Chelak; Josephine Ferro, the Monroe County Recorder of Deeds; and the Superior Court of Pennsylvania. *See* Am. Compl. at 8–9.

[3] Jung includes claims against the Monroe County Sheriff's Office; the Monroe County Sheriff, Todd Martin; Deputy Sheriff Darlene Lee; and Deputy Sheriff Herbert Heavener. *See id.* at 9.

[4] In addition to the defendants previously mentioned, Jung has brought suit against Mortgage Electronic Registration Systems, Inc., the nominee on the mortgage; Selene Financial, L.P. and OCwen Loan Servicing, LLC, loan servicers for her loan; several law firms involved in the foreclosure process, Reed Smith, LLP, Stern & Eisenberg, P.C., and Phelan Hallinan Diamond & Jones, PLLC; the County of Monroe; Commonwealth Land Title Company, the company that reviewed title in the initial transaction; Shauna Morie Smith, a BANA employee; and Judge John J. Thomas, the bankruptcy judge who presided over her bankruptcy petition.

Defendants BANA, Shauna Morie Smith, Mortgage Electronic Registration Systems, Inc., and Reed Smith LLP filed a Motion to Dismiss on May 24, 2018. *See* BANA's Mot. Dismiss at 1, ECF No. 19. Wilmington, Selene Financial LP, and Stern & Eisenberg, P.C. (the "Wilmington Defendants") filed their own Motion to Dismiss on May 25, 2018. *See* Wilmington Mot. Dismiss at 1, ECF No. 23. Most of the Pennsylvania judicial defendants moved to dismiss shortly thereafter, *see* Pennsylvania Judicial Defs. Mot. Dismiss at 1, ECF No. 29, followed by Ocwen Loan Servicing, LLC and the Commonwealth of Pennsylvania, *see* Ocwen Mot. Dismiss at 1, ECF No. 33; Commonwealth Mot. Dismiss at 1, EFC No. 37. On December 4, 2018, U.S. Bankruptcy Court Judge John Thomas moved to dismiss. *See* Thomas Mot. Dismiss at 1, ECF No. 57. A number of defendants also moved for sanctions pursuant to Fed. R. Civ. P. 11 and demanded the withdrawal of Jung's complaint. *See* Wilmington Mot. Sanctions at 1, ECF No. 41. Jung has moved for default judgment and has sought a variety of additional relief, including striking most of the Defendants' briefs. *See generally* Docket, *Jung v. Bank of America*, No. 18-cv-962-RC (D.D.C.).

On October 17, 2018, Jung filed a "Notice of Separate Claim" described as an "Affidavit for Stolen items by Defendants[.]" Pl's Notice of Separate Claim, ECF No. 50. In the notice, Jung again relays the facts surrounding the seizure of the East Stroudsburg property and lists furniture and belongings that were inside of the property and that she alleges the Defendants stole from her upon the foreclosure and her eviction. *See id.* at 8–16. Jung requests over $3,500,000 in supplemental relief, which she explicitly states is separate from the relief sought in her amended complaint. *See id.* at 17. On October 22, 2018, the Notice of Separate Claim was followed by a "Notice of Joinders[,]" in which Jung purports to add additional defendants to the litigation. Pl.'s Amended Notice of Joinders, ECF No. 53.

### III.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of an action for lack of subject matter jurisdiction. Federal courts are courts of limited jurisdiction, and it is generally presumed that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Accordingly, it is the plaintiff's burden to establish that the court has subject matter jurisdiction over his or her claims. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). In determining whether the plaintiff has met this burden, a court must accept "the allegations of the complaint as true," *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015), and "construe the complaint liberally, granting the plaintiff the benefit of all inferences that can be derived from the facts alleged[,]" *Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C. Cir. 2004) (internal quotation marks omitted). However, "the plaintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13-14 (D.D.C. 2001).

If a federal court lacks subject matter jurisdiction, it cannot reach the merits of the case, and must either dismiss it or transfer it to another court. *Amerijet Int'l Inc. v. U.S. Dep't of Homeland Sec.*, 43 F. Supp. 3d 4, 20 (D.D.C. 2014). As a court of limited jurisdiction, it is imperative that this Court "begin, and end," with an examination of its jurisdiction. *Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004). The Court has a continuing duty to examine its subject matter jurisdiction and must raise the issue *sua sponte* when it comes into doubt. *See Bronner v. Duggan*, 324 F.R.D. 285, 294 (D.D.C. 2018) (citing *Henderson ex. rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011)).

## IV.　ANALYSIS

Multiple defendants have moved to dismiss Jung's complaint on a number of grounds, including personal jurisdiction, subject matter jurisdiction, and failure to state a claim.  The Court finds that it lacks subject matter jurisdiction as to all judicial defendants because of absolute immunity, and that it lacks subject matter jurisdiction over all other claims pursuant to the *Rooker-Feldman* doctrine.  Accordingly, the Court grants the motions to dismiss and *sua sponte* dismisses all remaining claims.  The Court also denies all relief sought in Jung's Notice of Separate Claim.  Because this is Jung's first filing in this district, the Court denies Wilmington's motion for sanctions.  All remaining pending motions are denied as moot.

### A.  Absolute Immunity

First, the Court finds that all claims against the Pennsylvania state judges and U.S. Bankruptcy Judge John Thomas must be dismissed on grounds of absolute immunity.  "Because 'the nature of the adjudicative function requires a judge frequently to disappoint some of the most intense and ungovernable desires that people can have,' judges are protected by absolute judicial immunity."  *Atherton v. District of Columbia Office of Mayor*, 567 F.3d 672, 682 (D.C. Cir. 2009) (quoting *Forrester v. White*, 484 U.S. 219, 226 (1988)).  Jung brings claims against the judicial defendants for actions they took in their judicial capacity, and her claims are therefore barred by absolute immunity.

Judicial immunity applies to "suits for money damages for all actions taken in the judge's judicial capacity, unless these actions are taken in the complete absence of all jurisdiction."  *Sindram v. Suda*, 986 F.2d 1459, 1460 (D.C. Cir. 1993).  Additionally, "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief

was unavailable." 42 U.S.C. § 1983. "[T]he scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978). Further, a judicial act "does not become less judicial by virtue of an allegation of malice or a corruption of motive." *Forrester*, 484 U.S. at 227. Accordingly, "[a] judge's decision to file or deny a party's motions or requests is an action routinely performed by a judge in the course of litigation, and thus would constitute a judicial act immune from suit." *Thomas v. Wilkins*, 61 F. Supp. 3d 13, 18 (D.D.C. 2014) (listing cases).

Jung brings claims for money damages against all judicial defendants, and seeks an injunction "order[ing] [all] Defendants to remove the mortgage lien" on her property. Am. Compl. at 36–37. Jung neither argues, nor do the acts alleged in the complaint suggest, that any of the judicial defendants engaged in non-judicial acts. Rather, the state and federal judges included in Jung's complaint appear to merely have acted or ruled in a manner with which Jung disagreed as part of their official duties, sparking her "allegation of malice[.]" *Forrester*, 484 U.S. at 227. Jung alleges that the named judges improperly ruled against her in her various lawsuits. *See generally* Am. Compl. at 11–15 , 22–25. As discussed above, these are judicial acts that trigger absolute immunity. Therefore, this Court dismisses Jung's claims against Pennsylvania state Judges Arthur Zulick, David Wlliamson, Jennifer Sibum, Russell Shurtleff, and Gregory Chelak; and Bankruptcy Judge John Thomas.

### B. The *Rooker-Feldman* Doctrine

In their motions to dismiss, Defendants BANA, MERS, Reed Smith, LLP, and Shauna Morie Smith[5] argue that this Court lacks subject matter jurisdiction over Jung's claims because

---

[5] Defendants Wilmington, Christiana Trust, Selene Financial, L.P., and Stern & Eisenberg, P.C. also join the positions taken by BANA, MERS, Reed Smith, LLP, and Smith in their Motion to Dismiss. Wilmington Mot. Dismiss at 1.

of the *Rooker-Feldman* doctrine. BANA's Mem. Supp. at 7. The Court agrees, and finds that all remaining claims are barred by *Rooker-Feldman*.[6]

The *Rooker-Feldman* doctrine prevents federal courts from reviewing a plaintiff's claims when the plaintiff previously filed the same claims in state court and lost. *See D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). In essence, it "prevents the lower federal courts from exercising jurisdiction over cases brought by 'state-court losers' challenging 'state-court judgments rendered before the district court proceedings commenced.'" *Bradley v. DeWine*, 55 F. Supp. 3d 31, 41 (quoting *Lance v. Dennis*, 546 U.S. 459, 460 (2006)). The *Rooker-Feldman* doctrine applies when three criteria are met. *See id.* First, "[t]he party against whom the doctrine is invoked must have actually been a party to the prior state-court judgment." *Lance*, 546 U.S. at 462. Second, the federal suit must raise claims that "have been actually raised" in, or are "inextricably intertwined with[,]" the state court judgment. *Id.* A claim is "inextricably intertwined" with a prior state-court judgment unless its "core" is "independent" of that judgment. *Bradley*, 55 F. Supp. 3d at 41 (citing *Stanton v. D.C. Court of Appeals*, 127 F.3d 72, 76 (D.C. Cir. 1997)). Third, "the federal claim must not be parallel to the state-court claim." *Lance*, 546 U.S. at 462. "A federal claim is parallel to a state-court claim if it is filed after the state-court claim, but before the state court enters judgment." *Bradley*, 55 F. Supp. 3d at 42 (citing *Exxon Mobil v. Saudi Basic Indus.*, 544 U.S. 280, 289–91 (2005)). The Court briefly reviews the first and third factors, before considering whether Jung's claims are "inextricably intertwined" with a prior state court judgment.

---

[6] For defendants who did not raise subject matter jurisdiction as a ground for dismissing Jung's case, this Court may, and does, raise it *sua sponte*. *See Henderson ex rel. Henderson*, 562 U.S. at 434 ("[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press.").

The first and third elements required for the *Rooker-Feldman* doctrine to apply are clearly met. The doctrine has been invoked against Jung, who was a party to the prior state court proceedings relating to the East Stroudsburg property, namely the prior foreclosure and eviction actions and Jung's parallel state suits seeking to stop the foreclosure. *See* Am. Compl. at 11–12. And the prior state actions have concluded because final judgment has been entered in all these proceedings. The foreclosure proceedings in the Court of Common Pleas of Monroe County resulted in a default judgment being issued in BANA's favor in April 2015, and in a Sheriff's Deed being recorded against the property in Wilmington's favor on August 26, 2016. *See* BANA's Mem. Supp. at 2; Sheriff's Deed, Am. Compl. Ex. 1 at 27–31. Jung's appeal from the Court of Common Pleas' judgment was denied. *See* Am. Compl. at 12; BANA's Mem. Supp. at 2. The eviction proceedings were concluded when a Writ of Possession was issued in Wilmington's favor on September 1, 2017. *See* BANA's Mem. Supp. at 2; Writ of Possession, Am. Compl. Ex. 1 at 36–38. And Jung's two subsequent state suits were dismissed. *See* Wilmington Mem. Supp. Mot. Sanctions at 5.

Because Jung is the party against whom the *Rooker-Feldman* defense is being asserted, and the prior state actions are all concluded, the Court must review whether the claims raised by Jung in this federal suit were "actually litigated" in, or are "inextricably intertwined with[,]" the prior state suits. *Lance*, 546 U.S. at 462. The Court finds this factor met as to all of Jung's claims against the remaining defendants because all are inextricably intertwined with prior state court judgments.

Jung first brings claims for violation of the First, Fourth, Fifth, Sixth, Seventh, Ninth, Thirteenth, and Fourteenth Amendments. Jung's constitutional claims all arise out of an alleged deprivation of Jung's constitutional rights during the foreclosure and eviction process or during

10

subsequent state litigation. Jung's Fifth and Fourteenth Amendment claims contain allegations that all Defendants deprived her of her home without due process (and compensation, in the case of the Fifth Amendment claim), *see* Am. Compl. at 21–22, and presuppose that the foreclosure and eviction were wrongfully conducted, which goes to the core of the prior state court foreclosure and eviction judgments. Jung asserts in her Seventh Amendment claim that her right to trial by jury was violated by all defendants because state courts reviewing her multiple complaints relating to the foreclosure and eviction refused to allow a trial by jury. *See* Am. Compl. at 21. Such a claim essentially asks the Court to reverse those prior state court decisions dismissing her claims.[7] And Jung's remaining constitutional claims, rooted in the Fourth, Sixth, Ninth, and Thirteenth Amendments, similarly involve alleged violations of Jung's constitutional rights through the foreclosure and eviction process, which resulted in the alleged trespass on, and theft of, her property. *See id.* at 20–22. Through these claims, Jung asks the Court to find the underlying foreclosure and eviction judgments, or the state court judgments dismissing her multiple related lawsuits, improper.

Because all the constitutional violations Jung alleges rely on the invalidity of the prior state court proceedings, her claims "fall[] squarely within the ambit of the *Rooker-Feldman* doctrine." *Hunter v. U.S. Bank Nat'l Ass'n*, 698 F. Supp. 2d 94, 99 (D.D.C. 2010). In *Hunter*, the defendant lost a foreclosure action in state court and brought claims in federal court to

---

[7] Jung mentions that her Seventh Amendment rights were also violated when the "federal district court of Scranton . . . refused to give trial by jury[.]" Am. Compl. at 21. To the extent Jung seeks to challenge the validity of any federal district court judgment, this Court lacks subject matter jurisdiction because federal district courts do not have jurisdiction to reconsider decisions of other federal district courts. *See, e.g.*, *Atchison v. U.S. District Courts*, 190 F. Supp. 3d 78, 88 (D.D.C. 2016); *Fleming v. United States*, 847 F. Supp. 170, 172 (D.D.C. 1994). "To the extent [Jung] objects to the decision of the [Bankruptcy] court . . . , her proper remedy was an appeal of that decision." *Atchison*, 190 F. Supp. 3d at 88.

11

contest the validity of the judgment and obtain damages for injuries suffered as a result of the foreclosure. *See id.* at 99–100. The court explained that "[a]lthough Hunter's . . . claim is not styled as an appeal from the foreclosure action, it is clear from the Complaint that . . . [it] is based entirely on the alleged impropriety of the foreclosure[,]" because the alleged injuries stemmed from the foreclosure and Hunter asked the court to modify the foreclosure judgment. *Id.* at 100. Jung's claims are similar to those in *Hunter*: while styled as claims for constitutional violations by the defendants, they all rest on alleged improprieties that occurred as part of the foreclosure and eviction process or of subsequent state suits challenging that process. Jung similarly also requests that the Court void the foreclosure and eviction judgments against her. *See* Am. Compl. at 34, 37. Her claims thus all "involve . . . issues that are inextricably intertwined with a state court judgment," *Hunter*, 698 F. Supp. 2d at 100, and must be dismissed under *Rooker-Feldman*. *See also Toth v. Wells Fargo Bank, N.A.*, 82 F. Supp. 3d 373, 376–77 (D.D.C. 2015) (finding that *Rooker-Feldman* doctrine applied where plaintiff sought to attack state court judgment through complaint that, "although incomprehensible in many respects," alleged constitutional due process violations stemming from foreclosure and eviction and demanded reversal of state court judgment upholding eviction).

Jung's next set of claims, for violations of 18 U.S.C. §§ 152, 241-42, 287, 472–75, 504, 1001, 1005, 1341-43, 1621, 1951, 1961, 1962, 1964, and 2071, are criminal charges that Jung purports to brings against some or all defendants. She asserts that the defendants committed criminal acts by allegedly violating her rights and stealing her property as part of the foreclosure and eviction process. For example, Jung asserts mail fraud under 18 U.S.C. §§ 1341-43 because the defendants used the United States Postal Service to communicate with her about her debt as it related to the East Stroudsburg property. Am. Compl. at 27. She also alleges that all defendants

committed extortion under 18 U.S.C. § 1951 by forcing her to allow them to obtain her property through "duress, threat, and coercion[.]" *Id.* at 31–32. Because the common ground giving rise to all of Jung's criminal claims is the wrongfulness of the prior state foreclosure and eviction judgments, and finding in her favor on those claims would essentially nullify those prior judgments, the criminal claims are also barred by *Rooker-Feldman*.[8]

Jung's remaining set of claims are similar to her constitutional and criminal claims in that she accuses the non-judicial defendants of impropriety in the debt collection, foreclosure, or eviction processes relating to her home. These claims include alleged violations of 12 U.S.C. § 24, 15 U.S.C. § 1692, and 31 U.S.C. § 3729; common law trespass; violations of the *Brady* Rule, *Brady v. Maryland*, 373 U.S. 83 (1963); and an unspecified claim that all defendants, together with the Bankruptcy Judge assigned to Jung's case, "used [the Judge's] unconstitutional order to evict [Jung]." Am. Compl. at 31.[9] Jung again presupposes that the foreclosure and eviction were wrongfully conducted and seeks to rectify the alleged mishandling of the prior state court

---

[8] Separately from the *Rooker-Feldman* doctrine, this Court also lacks subject matter jurisdiction over Jung's claims based on criminal statutes because she does not have standing to bring criminal charges. "'It is well-settled that 'a citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution,' and 'a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.'" *Ahuruonye v. U.S. Dep't of Interior*, 312 F. Supp. 3d 1, 12 (D.D.C. 2018) (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *see also Masoud v. Suliman*, 816 F. Supp. 2d 77, 80 (D.D.C. 2011) (dismissing criminal claims for lack of subject matter jurisdiction and noting that such statutes cannot provide the basis for a cause of action under 28 U.S.C. § 1331); *Hunter v. District of Columbia*, 384 F. Supp. 2d 257, 260 n.1 (D.D.C. 2005) (dismissing claims based on criminal statutes because they did not provide a cause of action).

[9] Several of these claims, like "violating the Brady rule," are difficult to make sense of. Nevertheless, even those claims that do not appear to be linked to a valid cause of action are still alleged to arise out of the foreclosure and eviction proceedings in connection with the East Stroudsburg property. And to the extent Jung's claim for impropriety in connection with her bankruptcy case purports to challenge the outcome of that case rather than the underlying eviction proceeding, as discussed above the Court does not have jurisdiction to reconsider decisions of other federal courts. *See, e.g.*, *Atchison*, 190 F. Supp. 3d at 88.

proceedings. For example, Jung alleges that BANA and Wilmington conspired against her by not disclosing all of the information necessary for her to properly contract with them, in a fraudulent scheme designed to make her lose her home. *See* Compl. at 30. She alleges violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, insofar as there was an "[i]llegal debt collection practice without validation of contract" with respect to the East Stroudsburg property. Compl. at 30. These claims again are premised on the notion that the foreclosure and eviction were wrongfully conducted, and finding for Jung would necessarily mean invalidating the state courts' prior foreclosure and eviction judgments. As such, the claims are also barred by the *Rooker-Feldman* doctrine.

### C. Jung's Notice of Separate Claim

The Court denies all relief sought in Jung's Notice of Separate Claim because it constitutes an improper filing under the Federal Rules of Civil Procedure. In the notice, Jung purports to bring a separate claim for money damages against both the defendants in the amended complaint and additional defendants, for "equity in the [p]roperty" and "stolen items" as a result of the foreclosure. Pl.'s Notice of Separate Claim at 17. Jung notes that this claim for over $3.5M is "not include[d] in the original complaint[.]" *Id.* The Court gathers that Jung's intent is to litigate this new claim, including against the new defendants, in parallel to the claims in her complaint. The notice therefore essentially functions as an amendment to Jung's Amended Complaint that adds a new claim against various defendants. Because this amendment does not comply with the Federal Rules of Civil Procedure, the Court cannot consider the claim and denies all relief sought.

Under Rule 15 of the Federal Rules of Civil Procedure, parties can amend their pleadings once as a matter of right within 21 days. *See* Fed. R. Civ. P. 15(a). Jung has already done so. A

party who wishes to amend her complaint for a second time may do so "only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15. Jung has not requested leave to amend her complaint, and the Court accordingly cannot consider the additional claims brought in the notice. Even construing the notice as a request for leave to include the additional claims in an amendment to Jung's complaint, the Court does not find that justice so requires because all proposed additional claims are barred under *Rooker-Feldman*, and, thus, amendment would be futile. *See, e.g.*, *BEG Invs., LLC v. Alberti*, 85 F. Supp. 3d 13, 23 (D.D.C. 2015) (noting that amendment is futile and thus motion to amend should be denied "if it . . . fails to state a legal theory or could not withstand a motion to dismiss" (quoting *Robinson v. Detroit News, Inc.*, 211 F. Supp. 2d 101, 114 (D.D.C. 2002))). Moreover, given that the property is not located in this district and the alleged injuries did not occur here, venue would also not be appropriate. *See, e.g.*, *Dehaemers v. Wynne*, 522 F. Supp. 2d 240, 247 (D.D.C. 2007) (finding amendment futile where District of Columbia was improper venue for plaintiff's Title VII claims).[10]

### D. Motion for Sanctions

Finally, the Wilmington Defendants move for sanctions against Jung.[11] While the motion does not identify any specific relief sought beyond striking Jung's complaint, it appears to

---

[10] As discussed above, the additional claims brought in Jung's Notice of Separate Claims are of the same nature as many of the claims in the Amended Complaint, in that they arise directly out of the alleged improper taking of the East Stroudsburg property through an invalid foreclosure and eviction. Jung lost the prior state proceedings and is essentially attempting to re-litigate them through her additional claims. Even if the complaint were amended properly, the claims would still be barred by *Rooker-Feldman*.

[11] On November 26, 2018, Jung also filed a motion to strike Ocwen's opposition to her Notice of Separate Claim. *See* Pl.'s Mot. Strike at 1, ECF No. 55. The motion notes that Blank Rome, LLC, Ocwen's counsel, "is sanctioned under rule 11[,]" *id.* at 1, because it allegedly submitted false statements in the opposition, *see id.* at 4. To the extent Jung's motion can be construed as a motion for sanctions under Rule 11, the motion must be denied because it does not comply with

15

suggest that the Court should impose further monetary or non-monetary sanctions.[12] *See* Wilmington Mem. Supp. Mot. Sanctions at 8–9. The Court need not strike Jung's complaint because it has already found that it has no subject matter jurisdiction over her claims. And as discussed below, the Court declines to issue any sanctions against Jung, whether monetary or non-monetary.

First, the Court does not believe that any monetary sanctions are warranted here. "Rule 11 provides certain bases for the imposition of sanctions, including that a party's legal contentions are frivolous or unwarranted under existing law, or that the claims have been presented for an improper purpose such as harassment." *Smith v. Scalia*, 44 F. Supp. 3d 28, 45 (D.D.C. 2014) (citing Fed. R. Civ. P. 11(c)(1)). And such sanctions can be imposed on pro se litigants. *See, e.g.*, *id.*; *Kurtz v. United States*, 779 F. Supp. 2d 50, 51 n.2 (D.D.C. 2011). However, as the Wilmington Defendants recognize, *see* Wilmington Mem. Supp. Mot. Sanctions at 8, the imposition of monetary sanctions is solely at the Court's discretion. Because this is the first suit Jung has filed in this jurisdiction, and because it believes that imposing monetary penalties would be disproportionate to Jung's actions, the Court declines to impose any monetary sanctions.

---

the requirements of Rule 11. "A motion for sanctions must be made separately from any other motion[.]" Fed. R. Civ. P. 11(c)(2). In addition, "[t]he allegedly offending party must be served twenty-one days before a motion for sanctions is filed with the Court, allowing an opportunity for that party to rectify its behavior before the judicial imposition of sanctions." *Brown v. F.B.I.*, 873 F. Supp. 2d 388, 408 (D.D.C. 2012) (citing Fed. R. Civ. P. 11(c)(2)). "This procedural rule must be satisfied before the Court considers the substantive aspects of plaintiff's motion." *Id.* Here, Jung's motion is filed together with a motion to strike and appears to have been served just three days before filing. *See* Pl.'s Mot. Strike at 6. Accordingly, the motion is denied.

[12] The memorandum in support for the motion mentions the availability of monetary and non-monetary sanctions, Wilmington Mem. Supp. Mot. Sanctions at 8–9, and notes that "Defendants respectfully request that the Court . . . award other appropriate relief detailed in the proposed form of order[,]" *id.* at 12, but no proposed order is attached to the motion.

Second, to the extent the Wilmington Defendants can be construed as requesting a pre-filing injunction, the Court also declines to impose one here because it does not believe that the motion has sufficiently put Jung on notice of the possibility that an injunction may issue against her. While Jung, like every American, has a constitutional right of access to the courts, that right "'is neither absolute nor unconditional.'" *In re Yelverton*, 526 B.R. 429, 432 (D.D.C. 2014) (quoting *In re Green*, 669 F.2d 779, 785 (D.C. Cir. 1981)). "Federal courts 'have both the inherent power and the constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions[,]'" *Crumpacker v. Ciraolo-Klepper*, 288 F. Supp. 3d 201, 204 (D.D.C. 2018) (quoting *Anderson v. D.C. Public Defender Serv.*, 881 F. Supp. 663, 666 (D.D.C. 1995)), and accordingly have the authority to issue pre-filing injunctions against vexatious litigants, *see, e.g., id.* at 204; *Smith*, 44 F. Supp. 3d at 46.

However, the D.C. Circuit has emphasized that pre-filing injunctions "'remain very much the exception to the general rule of free access to the courts,' and 'the use of such measures against a *pro se* plaintiff should be approached with particular caution.'" *In re Powell*, 851 F.2d 427, 431 (D.C. Cir. 1988) (quoting *Pavilonis v. King*, 626 F.2d 1075, 1079 (1st Cir. 1980)). Accordingly, courts in this district follow a three-step process before issuing such an injunction: "first, notice and the opportunity to be heard are provided; second, the court develops a record for review that considers both the number and content of the plaintiff's filings; and third, the court makes substantive findings as to the harassing nature of the litigant's actions." *Dougherty v. United States*, 156 F. Supp. 3d 222, 236 (D.D.C. 2016) (quoting *Smith*, 44 F. Supp. 3d at 46).

The Court finds that Jung was not given the appropriate notice and opportunity to be heard. "[T]he requirement of notice and an opportunity to be heard can be satisfied without a hearing in court, so long as the affected litigants have an opportunity to contest the injunction in

17

briefing." *Crumpacker*, 288 F. Supp. 3d at 204. But here, the Wilmington Defendants' motion for sanctions mentions the term "pre-filing injunction" exactly twice, in two succinct paragraphs explaining the standard for imposing non-monetary sanctions under Rule 11 in the Fourth Circuit. *See* Wilmington Mem. Supp. Mot. Sanctions at 9. The Wilmington Defendants never elaborate on that standard—which, the Court notes, appears different from the standard courts use in this Circuit—or actually make any argument for the imposition of a pre-filing injunction. *See generally id.* Instead, the motion simply restates the Wilmington Defendants' prior arguments for dismissal of the complaint. *See id.* at 9–12. The Court accordingly finds that Jung was not afforded the required notice and opportunity to be heard, and that the imposition of a pre-filing injunction is unwarranted at this time. Because this is Jung's first filing in this district, and in light of this opinion dismissing all of her claims, the Court declines to unnecessarily prolong this case by asking the parties to submit additional briefs on this issue. Instead, the Court "will caution [Jung] that any future filings in this Court relating to the subject matter of the instant complaint may subject [her] to sanctions or a future pre-filing injunction." *Dougherty*, 156 F. Supp. 3d at 236.

## V. CONCLUSION AND ORDER

For the foregoing reasons, all filed motions to dismiss are **GRANTED**. All remaining claims against all other defendants are **DENIED** for lack of subject matter jurisdiction. Wilmington's Motion for Sanctions (ECF No. 41) is **DENIED**. And because this case has been dismissed for lack of subject matter jurisdiction, the remainder of the pending motions are **DENIED AS MOOT**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: December 19, 2018　　　　　　　　　　　　　　　　RUDOLPH CONTRERAS
　　　　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge